# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# NORTHERN DIVISION

| | |
|---|---|
| MICHAEL HONEYSETT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Judge Joan H. Lefkow |
| ) | |
| ALLSTATE INSURANCE COMPANY, ) | Case No. 07-cv-4220 |
| ALLSTATE RETIREMENT PLAN, and ) | |
| ADMINISTRATIVE COMMITTEE ) | |
| OF THE ALLSTATE RETIREMENT ) | |
| PLAN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Michael Honeysett, Deborah Palmer, and Chuck Kunz ("plaintiffs") filed this purported class action complaint on behalf of themselves and all others similarly situated under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101 *et seq.* ("ERISA"), against defendants Allstate Insurance Company ("Allstate"), the Allstate Retirement Plan ("the Plan"), and the Administrative Committee of the Allstate Retirement Plan ("the Committee") (collectively, "defendants"). Plaintiffs allege that the Committee violated its fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a) (Count I), and that all defendants violated ERISA's prohibition against forfeiture of retirement benefits in ERISA § 203(a), 29 U.S.C. § 1053(a) (Count II). Defendants have moved to dismiss plaintiffs' amended complaint on the bases that (1) it fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), (2) plaintiffs have not exhausted their administrative remedies, and (3) the statute of limitations has run for plaintiff Kunz's claims. The court has jurisdiction pursuant to 29 U.S.C. § 1132(e). For the following reasons, defendants' motion [25] is denied.

## I.  Background

The plaintiffs are recently retired employees of Allstate and are participants in the Plan. Amended Complaint, at ¶ 2 (hereinafter AC ¶ __ ). Under the Plan, their pension benefits were offset by an estimation of their future Social Security benefits. AC ¶¶ 10-11. In this way their future Social Security benefits were integrated into their pension benefits. Plaintiffs believe that defendants unfairly reduced their pension benefits when calculating their offsets by estimating their compensation history instead of using their actual compensation history and by employing certain assumptions that led to a systematic overestimation of their Social Security benefits. Plaintiffs were notified that they had the option to provide their actual compensation history to be used in the calculation of their offsets but did not do so within the allotted time. AC ¶¶ 14-15, 21, 29, 35. They now allege (1) that the Committee breached its fiduciary duties by misleading them regarding the advisability of providing their actual compensation history to the Plan and (2) that the Plan's method of estimating their compensation history was unreasonable and effected a forfeiture of their vested benefits.

To estimate the Plan participants' compensation history in calculating their offsets, the Plan assumed that participants received a 6% annual salary increase every year, that they contributed to Social Security throughout their lifetimes, and that they were continuously employed between 1951 and 1988. AC ¶ 13. Plaintiffs were not aware that these assumptions would be made. *Id.*

The Summary Plan Description ("SPD") for the Plan in effect when plaintiffs elected to receive their benefits included the following statement:

> The Future Service Element calculation of your Pre-1989 benefit contains a Social Security offset, which is calculated based on [the] estimated compensation you earned from 1951 through 1988. You have the option of having your *actual* compensation from 1951 through 1988 (as recorded by the Social Security Administration) used in the calculation, instead of your estimated compensation. You may obtain your actual compensation from the Social Security Administration and forward it to the Allstate Benefits Center so that it may be used in your benefit calculation.
>
> Using actual prior compensation in the calculation of your pension benefit may produce a higher pension benefit for the following Participants:
>
> > Those whose employment includes a substantial number of years during which their compensation did not reach the Social Security maximum taxable earnings base.
>
> > Those whose prior earnings were not covered by Social Security. People in this group include those who worked for the U.S. government, some state and local governments, religious or charitable organizations, or Allstate employees who had one or more unpaid leave(s) of absence.
>
> > Those who did not work every year from 1951 through 1988.
>
> Using actual prior compensation will never result in a decrease in the pension benefit you are entitled to receive and will not affect the benefit you are entitled to receive from Social Security.

AC ¶¶ 14-15; Ex. B to Mem. Supp. Mot. Dismiss, at 18.[1]

Defendants knew that "most, if not all," of Allstate's retired employees fell into one of the three categories listed above. AC ¶ 15. They knew that most Plan participants would receive a larger pension benefit if they submitted their actual compensation history as opposed to relying on the Plan's estimation. *Id.* They also knew that the Plan participants' benefits could not be reduced if they submitted their actual compensation history. *Id.* But the defendants did not want

---

[1] The court can consider the SPD, which was attached to defendants' motion to dismiss, because it was referred to in the plaintiffs' complaint and is central to plaintiffs' claims. *McCready v. eBay*, 453 F.3d 882, 891 (7th Cir. 2006). Defendants also attach letters that were sent to the plaintiffs, but the court finds those unnecessary to consider.

3

retiring employees to submit their actual compensation history because they did not want to pay the larger pension benefits that would then be due. *Id.*

Plaintiffs say, "But for the inadequate disclosure ... as to (1) how the Social Security offset was calculated, and (2) the negative consequences for the Plan participants if they failed to provide their actual earnings, all of the Plan participants would have submitted their actual earnings for the purpose of calculating their Social Security offset." AC ¶ 28. "Plan participants who were misled by the Defendants' inadequate disclosures regarding the calculation of their Social Security offset received reduced benefits from the Retirement Plan." AC ¶ 30. Additionally, the Committee knew that Plan participants were not submitting their actual compensation history and that most of those participants were therefore receiving reduced benefits, but intentionally did not clarify the information it had provided. AC ¶¶ 35-36.

The SPD notified Plan participants that they had 120 days from their payment start date to provide their actual compensation history. AC ¶ 21. After 120 days elapsed, the Administrator would not consider actual compensation history for the purpose of recalculating a participant's benefit. *Id.* All Plan participants who have submitted actual compensation history more than 120 days after their payment start date have received notices from the Administrator stating that because four months have elapsed, their benefits would not be recalculated. AC ¶ 25.[2]

## II. Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the complaint on the basis of a failure to state a claim upon which relief may be granted. In ruling on

---

[2] Some additional facts relevant to the plaintiffs' exhaustion of administrative remedies will be stated below in the section discussing that issue.

4

the motion, the court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *Bell Atlantic Corp.* v. *Twombly*, — U.S. —, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *Pisciotta* v. *Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). The plaintiff need not plead particularized facts in cases not involving fraud, but the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Bell Atlantic*, 127 S. Ct. at 1973-74 & n.14. Complaints need not anticipate or attempt to defuse potential defenses. *Doe* v. *Smith*, 429 F.3d 706, 709 (7th Cir. 2005). But when the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, dismissal may be appropriate. *United States* v. *Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

### III. Discussion

#### A. Breach of Fiduciary Duty

Plaintiffs contend that the use of the word "may" in the phrase "[u]sing actual prior compensation in the calculation of your pension benefit may produce a higher pension benefit" in the SPD was misleading because it suggested that it was not clear or nearly certain that the Plan participants' retirement benefits would be larger if the plaintiffs' actual compensation history was used in calculating their offsets. They argue that "[d]efendants systematically denied Allstate employees their full retirement benefits through a calculated effort to mislead them into acting against their substantial economic self-interests. So ambiguous and misleading were the notices provided by their fiduciary that sophisticated, long-term insurance company employees were consistently prevented from recognizing that it was imperative that they submit their actual

5

earnings history for the calculation of their pension benefit." Mem. Opp. Mot. Dismiss, at 1. Plaintiffs suggest that the Committee instead should have "strongly recommended" that the plaintiffs submit their actual compensation history. *Id.* at 2. Alternatively, plaintiffs contend that once the Committee knew that most of the Plan participants were not submitting their actual compensation history, it had an affirmative duty to clarify its earlier disclosures but intentionally did not do so.

ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims...." ERISA § 404(a); 29 U.S.C. § 1104 (internal headings omitted). ERISA fiduciaries therefore have both a duty of loyalty and a duty of care. *Frahm v. Equitable Life Assurance Soc'y*, 136 F.3d 955, 960 (7th Cir. 1998). Material facts affecting the interests of plan participants or beneficiaries must be disclosed and fiduciaries breach their duties if they mislead plan participants or misrepresent the terms or administration of a plan. *Kamler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672, 681 (7th Cir. 2002). The Supreme Court has stated, "To participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is not to act solely in the interest of the participants and beneficiaries.... Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA." *Varity Corp. v. Howe*, 516 U.S. 489, 506, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996) (internal quotation marks and citations omitted).

Not all errors in communicating information regarding a plan violate a fiduciary's duties under ERISA, however. *Kamler*, 305 F.3d at 681; *Frahm*, 136 F.3d at 959-60. For example, fiduciaries have no duty to emphasize something that has been clearly communicated to plan participants. *Kamler*, 305 F.3d at 681. "ERISA does not require plan administrators to investigate each participant's circumstances and prepare advisory opinions for literally thousands of employees." *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 590-91 (7th Cir. 2000) (internal quotation marks and citations omitted); *accord Kamler*, 305 F.3d at 672. Also, "in this circuit, if accurate written information is provided ... then the plaintiffs are unfortunately out of luck." *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 642 (7th Cir. 2004); *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 406 (4th Cir. 1998). Furthermore, courts have held that it is not a breach of fiduciary duty to fail to disclose information in an SPD that the ERISA provision on SPDs does not require to be disclosed. *See* 29 U.S.C. § 1022; *Sprague*, 133 F.3d at 405-06 ("We are not aware of any court of appeals decision imposing fiduciary liability for a failure to disclose information that is not required to be disclosed [by ERISA's detailed disclosure provisions].").

If a communication to ERISA plan participants is arguably inaccurate or incomplete, evidence that the fiduciaries intended to mislead the participants can establish a violation of the duty of loyalty. *Vallone*, 375 F.3d at 641-42; *Frahm*, 137 F.3d at 959-60. For example, in *Vallone*, employees were offered an early retirement package that included a monthly health care allowance that was described as a "lifetime benefit." 375 F.3d at 626. They were never told by the plan fiduciaries that "lifetime" meant "irrevocable," *id.* at 628, and the plan documents included explicit reservation of rights clauses reserving the right for the allowance to be changed or eliminated, *id.* at 642, but they nevertheless made that assumption, which was material to their

7

decision to accept the early retirement package. *Id.* at 628-29. The court held that even if the fiduciaries' failure to explicitly warn the participants of the revocability of the allowance in every communication to them was negligent, negligence by itself is not actionable without proof that the fiduciary set out to disadvantage or deceive its employees. *Id.* at 642. It said, "just because [the defendant] wanted as many of its eligible employees as possible to accept [the early retirement plan] does not mean that it purposefully violated its duty of loyalty by failing to provide an explicit warning when the necessary information was already in the early retirees' hands." *Id.* at 641. Because there was no evidence that the fiduciaries had set out to deceive their employees by their actions, the court held that their failure to provide additional explicit warnings amounted only to non-actionable negligence, and therefore, plaintiffs' breach of fiduciary duty claim failed. *Id.* at 641-42.

The *Vallone* court also relied on the fact that the information that had been provided to plan participants was accurate. *Id.* It said, "in this circuit, if accurate written information is provided, as it was here, then the plaintiffs are unfortunately out of luck." *Id.* (citing *Kamler*, 305 F.3d at 682; *Librizzi v. Children's Mem. Med. Ctr.*, 134 F.3d 1302, 1305 (7th Cir. 1998)). In determining that the information was accurate, however, the court did consider the fact that there was no evidence in that case that the fiduciaries were "aware that the early retirees were coming to the mistaken conclusion that 'lifetime' equated to 'vested.'" *Id.* at 642. The court's statement suggests that such evidence may be relevant to determining the accuracy or completeness of statements made to participants.

In this case, the SPD explicitly notified the plaintiffs that they had the option of submitting their actual compensation history, that using actual compensation history in the

8

calculation of their offsets could produce a higher pension benefit for certain specifically described groups, and that submitting their actual compensation history could never lead to a decrease in their pension benefits. The use of the word "may," by itself, does not render this communication ambiguous or misleading. It does not indicate to readers that they should not submit their actual compensation history; to the contrary, by stating that doing so might help and could not hurt, this language encourages them to do so. Additionally, the complaint alleges only that "most" beneficiaries would receive a larger pension benefit if they submitted their actual compensation history. The statement that using actual compensation history in the calculation of pension benefits "may" produce a higher benefit is therefore not misleading.

On consideration of this motion to dismiss, however, the court cannot go so far as to conclude that plaintiffs can prove no set of facts that would entitle them to relief. *Vallone* and *Frahm*, for example, were decided on motions for summary judgment as opposed to motions to dismiss. *Vallone*, 375 F.3d at 626; *Frahm*, 137 F.3d at 957. Although plaintiffs have not argued that they need discovery to defend this claim, the court notes that it may be relevant to consider facts such as the demographics of the plan participants (in order to consider the audience for the SPD), the assumptions made in estimating the participants' compensation histories, the magnitude of the difference between the plaintiffs' estimated compensation histories and their actual compensation histories (and the resulting difference in their benefits), the percentage of participants for whom submitting actual compensation history would have resulted in a larger pension benefit, and the knowledge and intentions of the fiduciaries, as noted in *Vallone*, 375 F.3d at 642. While it seems unlikely that a reasonable factfinder could find that the disclosures made to the plaintiffs were inaccurate or incomplete, especially in light of the law in

9

this area,[3] a court's opinion that a claim is unlikely to succeed is not a basis to grant a motion to dismiss.

### B. Forfeiture

Section 203(a) of ERISA, 29 U.S.C. § 1053, says, "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age ...." Plaintiffs argue that all defendants violated this nonforfeitability provision because the method by which their Social Security offsets were estimated (in which it was assumed that all Plan participants received annual salary increases of six per cent throughout their lifetimes, that they worked continuously from 1951 to 1988, and that they contributed continuously to Social Security from 1951 to 1988) systematically overestimated their future Social Security benefits and was therefore unreasonable and in violation of section 1053(a). Additionally, plaintiffs argue that defendants violated this section by failing to comply with the requirement in the Internal Revenue Service's Revenue Ruling 84-45, 1984-1 C.B. 115, that the Plan give "clear written notice to each employee of the employee's right to supply actual salary history and of the financial consequences of failing to supply such history."

---

[3] Plaintiffs have cited no ERISA cases, and the court is aware of none, in which a failure to give a recommendation such as the one suggested here or to provide any analogous advice has been held to be a breach of fiduciary duty. In contrast, cases where courts have found breaches typically involve clearly misleading communications. For example, in *Varity*, a corporation created a new subsidiary with the purpose of transferring all of its "money-losing eggs" into that basket. 516 U.S. at 493. The fiduciaries knew that the subsidiary was likely to fail and, with the intention of freeing the parent corporation from the burden of paying the employees' benefits, misrepresented to them that their benefits would remain secure if they transferred to that subsidiary even though the fiduciaries knew that the employees' benefits would not be secure if the new company failed. *See id.* The Court found that this intentional misrepresentation was a clear breach of the fiduciaries' duties under ERISA. *Id.* at 507.

ERISA's definition of "nonforfeitable" assures that the "employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular amount or a method for calculating the benefit." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 512, 101 S. Ct. 1895, 68 L. Ed. 2d 402 (1981). Congress did not prohibit the calculation of benefit amounts through integration of Social Security payments; in fact, it "expressly preserved the option of pension fund integration with benefits available under [] the Social Security Act...." *Id.* at 514. The regulations implementing ERISA now confirm that nonforfeitable rights are not considered to be forfeitable by reason of the fact that they may be reduced to take into account benefits provided under the Social Security Act. 26 C.F.R. § 1.411(a)-(4)(a).

The only case the parties have cited (or that the court has found) involving a claim of forfeiture on facts similar to those present here is *Dameron v. Sinai Hospital of Baltimore, Inc.*, 815 F.2d 975 (4th Cir. 1987). In *Dameron*, the ERISA plan stated that

> [E]ligible employees are entitled to receive a pension benefit each year after age 65 of an amount equal to '50% of his final average compensation, less eighty-three and one-third percent of his annualized Social Security Benefit.' The plan defines a primary Social Security Benefit as 'the *estimated* primary Social Security Benefit to which an eligible Employee (*assuming he has always been a covered Employee under the Social Security Act*) was or would become entitled upon reaching the age of sixty-five.'

*Id.* at 977 (emphasis added by *Dameron*). The plaintiffs in *Dameron* filed that action after they found out that their pension benefits were being offset by amounts greater than the actual Social Security benefits they were receiving. *Id.*

The court interpreted the language of the plan quoted above as implicitly guaranteeing employees that the plan would use reasonable methods of estimating their Social Security benefits. *Id.* at 978. In addition, it held, after considering the legislative history and context of

11

ERISA, that ERISA's nonforfeiture provisions themselves require that estimates of Social Security benefits be reasonable. *Id.* at 979-80 ("We hold therefore that ERISA's forfeiture provisions and the plan itself bar the use of estimates of Social Security benefits to offset pension benefits which are not reasonably related to the actual level of Social Security benefits."). The plan's method of integrating Social Security benefits in *Dameron* therefore violated ERISA's nonforfeiture requirement in two ways. *Id.* at 980. First, the method of calculation was unreasonable and violated the plan itself because in addition to assuming that employees had always been covered under the Social Security Act, the plan made assumptions that were not stated in the plan materials (including that employees received wages that were substantially higher than was required for coverage). *Id.* And second, they violated ERISA's proscription against unreasonable integration because regardless of whether they were disclosed in the plan, both assumptions led to an unreasonable method of calculation. *Id.* at 980-81.

The defendants in this case argue that their method of calculating the Plan participants' Social Security offsets was reasonable because they gave the plaintiffs notice of the option to submit their actual compensation history and because their method complies with the Internal Revenue Service's Revenue Ruling 84-45.

The first argument confuses the reasonability of deciding whether or not to estimate the participants' offsets with the reasonability of the particular method of estimation used. It may have been reasonable for the plan to estimate the participants' Social Security benefits when the participants failed to submit their actual compensation history. But that does not necessarily mean that the method that defendants chose to calculate the offsets was itself reasonable. For example, the plaintiffs have alleged that the Plan assumed that they had been continuously

12

covered by Social Security between, which is one of the specific assumptions that the *Dameron* court found to be unreasonable in that case. 815 F.2d at 980-81.

Second, compliance with the requirements for integration in the Internal Revenue Service's Revenue Ruling 84-45, while relevant to reasonability, *Dameron*, 815 F.2d at 978, is not necessarily equivalent to it. For example, the Revenue Ruling is silent on the just-mentioned issue of assuming continuous coverage under the Social Security Act. Defendants have cited no cases and the court has found none that suggests that compliance with Revenue Ruling 84-45 is sufficient to comply with ERISA's forfeiture provisions.[4] *Cf. Dooley v. Am. Airlines*, 797 F.2d 1447, 1453 (7th Cir. 1986) ("IRS'[s] section 401 treasury regulations and revenue rulings are [not] incorporated into ERISA, *see* 29 U.S.C. § 1202(c)....").

Furthermore, an assessment of the reasonability of the Plan's method of calculation in this case, as well as a determination of whether it fully disclosed its method, is a question of fact not appropriate for determination on this motion to dismiss. *See Dooley*, 797 F.2d at 1453 (whether or not a plan violated ERISA's forfeiture provisions by changing an actuarial assumption used in determining benefits presented an issue of fact inappropriate for resolution on a motion for summary judgment).

Because plaintiffs have adequately alleged that defendants employed assumptions in calculating their offsets that were not stated in the Plan and that unreasonably reduced their benefits, they have stated a claim for violation of ERISA's nonforfeiture provisions.[5]

---

[4] Plaintiffs' claim that the defendants violated ERISA by failing to comply with the Revenue Ruling's requirement for "clear written notice" suffers from this same logical gap.

[5] Defendants also argue that Count II should be dismissed because it does not specifically
(continued...)

C.  **Exhaustion and the Statute of Limitations**

Exhaustion of an ERISA plan's available administrative remedies is a prerequisite to bringing suit under ERISA. *Zhou v. Guardian Life Ins. Co. of America*, 295 F.3d 677, 679 (7th Cir. 2002) (citing *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 873 (7th Cir. 1997)). Exhaustion furthers the "goals of minimizing the number of frivolous lawsuits" and allows for the development of a more complete factual record for review. *Id.* (quoting *Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 803, 807-08 (7th Cir. 2000). Failure to exhaust may be excused, however, if a claimant shows that there was a lack of meaningful access to administrative review procedures or that exhaustion of those procedures would be futile. *Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 662 (7th Cir. 2005) (citations omitted). "A decision to require exhaustion is committed to the sound discretion of the district court ...." *Id.* This is so even for a claim of breach of ERISA's fiduciary duty provisions. *Powell v. A.T. & T. Comm'ns, Inc.*, 938 F.2d 823, 825-26 (7th Cir. 1991).

Because failure to exhaust adminstrative remedies is an affirmative defense, it cannot provide a basis for a motion to dismiss unless the plaintiff's complaint pleads him out of court. *Graham v. United Parcel Serv.*, 519 F. Supp. 2d 801, 807-08 (N.D. Ill. 2007) (citing *Salas v. Wis. Dep't. of Corr.*, 493 F.3d 913, 921-22 (7th Cir. 2007)); *see also Zhou*, 295 F.3d at 680 ("Zhou admits that he did not exhaust his administrative remedies and pursue further administrative appeals of the partial denial of his claim."); *Wilczynski v. Lumbermens Mut. Cas.*

---

[5](...continued)
allege which defendants were responsible for which acts. The court finds that the allegations are sufficient to put the defendants on notice of the claim and that this argument is therefore not persuasive.

*Co.*, 93 F.3d 397, 402 (7th Cir. 1996) ("The parties agree that Ms. Wilczynski did not complete the final level of Lumbermens' internal administrative review."); *Bourassa v. Prudential Ins. Co. of Am.*, 2006 WL 3065335, at *2-3 (N.D. Ill. Oct. 24, 2006) (Lefkow, J.). Where a complaint shows that the plaintiff failed to exhaust his available administrative remedies, it must also plead sufficient facts to bring it within one of the two exceptions to the exhaustion requirement. *Zhou*, 295 F.3d at 680; *Bourassa*, 2006 WL 3065335, at *2-3.

In this case, the plaintiffs' complaint includes an allegation that plaintiff Kunz wrote a letter on February 4, 2005 inquiring about submitting his actual earnings after the deadline for doing so had passed. AC ¶ 22. The Committee replied to the letter saying that his actual wage history had to have been submitted by May 1, 2001. AC ¶ 23. The letter did not indicate that Kunz had the right to appeal that decision. *Id.* Plaintiffs allege that "[t]he correspondence that Kunz received from the Administrator with respect to its refusal to permit him to submit his actual wage history more than 120 days after their payment start date demonstrates the futility of an appeal. The Administrator did not suggest that an appeal from its decision was possible. Instead, the Administrator made clear that under no circumstances would the Plan consider actual earnings submitted beyond the 120 day time limit." AC ¶ 24. Additionally, they state, "All Plan participants who have submitted actual earnings more than 120 days after their payment start date have received notices from the Administrator stating that because four months have elapsed, their actual earnings history could no longer be considered for purposes of calculating the Social Security offset and that their benefits would not be recalculated." AC ¶ 25.

In their briefs on this motion to dismiss, the parties dispute whether Kunz's letters can be characterized as formal "claims" that were rejected by the Committee. If the letters were claims,

15

defendants argue that the plaintiffs did not appeal their denial and have not adequately alleged the futility of such an appeal. The problem with these arguments is that neither party has discussed what the Plan's available administrative remedies actually were beyond suggesting that the plaintiffs should have made formal claims and/or appealed the denial of those claims. Although the defendants have attached the 156 page Plan and the 142 page SPD, it is not the court's burden to review and interpret those documents to determine what remedies were available and whether or not an appeal would have been futile under the circumstances. Additionally, facts such as the nature and levels of administrative review available to Plan participants and the authority given to the Committee to consider late submissions of actual compensation history would be relevant to the court's exercise of its discretion. *See, e.g., Spann v. Chi. Physicians II, P.C.*, 2000 WL 263976, at *5 (N.D. Ill. Feb. 28, 2000). Furthermore, the parties concede that there is nothing in the complaint about whether or not plaintiffs Honeysett and Palmer exhausted their administrative remedies. For these reasons, the issue of exhaustion will have to wait until the summary judgment or trial stage of the case. *See Waldron v. Dugan*, 2007 WL 4365358, at *4-5 (N.D. Ill. Dec. 13, 2007).

The final issue is the defendants' argument that Kunz's forfeiture claim is barred by the statute of limitations.[6] Defendants argue that the three year statute of limitations provided in ERISA for breach of fiduciary duty claims, 29 U.S.C. § 1113, should apply to the forfeiture claim as well because both claims are based on the same facts. Alternatively, they argue that under the "most analogous state statute" test, *see Daill v. Sheet Metal Workers Local 73 Pension Fund*, 100 F.3d 62, 65 (7th Cir. 1996), the appropriate Illinois statute is either the five-year statute for

---

[6] Plaintiffs concede that Kunz's fiduciary duty claim is barred. Response, at 12.

conversion or the five-year statute for all civil actions not otherwise provided for. 735 Ill. Comp. Stat. 5/13-205. Plaintiffs only point out that the Fourth Circuit applied the analogous state statute for breach of contract to the forfeiture claims in *Dameron*. 815 F.2d at 981.

In *Daill*, the Seventh Circuit considered a case in which the plaintiff sued to recover pension benefits that had been forfeited by operation of the applicable plan when he left the company for a period of time. 100 F.3d at 63-64. The court held that the most analogous Illinois statute of limitations was the 10-year limitations period for suits pertaining to written contracts. *Id.* at 65.

The *Dameron* analysis of forfeiture claims, discussed above, involves a consideration of whether the alleged forfeiture violates the ERISA plan itself as well as whether it violates ERISA's nonforfeiture provisions. And the court has held that plaintiffs here have stated a forfeiture claim based in part on the Plan's alleged failure to disclose certain assumptions. Based on those circumstances and on the Seventh Circuit's holding in *Daill*, 100 F.3d at 65, this court agrees with the *Dameron* court in that the Illinois breach of contract statute of limitations is the most analogous to plaintiffs' claims here. Because the parties appear to agree that Kunz's claim accrued in 2001, the statute of limitations has not yet expired.

## IV. Conclusion and Order

For the foregoing reasons, defendants' motion [#25] is denied. Plaintiff Kunz is dismissed from Count I of the amended complaint. This case will be called for status on June 17, 2008 at 9:30 A.M.

Dated: May 30, 2008  Enter: _____
Judge Joan Humphrey Lefkow

17